**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**ETHAN ANDERSON,**

  **Petitioner,**

**v.**                                                   **Case No. 3:22cv2028-LC/MAF**

**SECRETARY, DEPARTMENT OF
CORRECTIONS,**

  **Respondent.**

**_____/**

## REPORT AND RECOMMENDATION

On February 16, 2022, Petitioner Ethan Anderson, a state inmate represented by counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  He also filed a supporting memorandum.  ECF No. 8-1.  On July 19, 2022, Respondent filed an answer, with exhibits.  ECF No. 10.  Petitioner filed a reply on August 26, 2022.  ECF No. 13.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases.  For the reasons stated herein, the filings before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## **Procedural Background**

By third amended information filed December 2, 2015, in Escambia County Circuit Court Case 2015-CF-092, the State of Florida charged Petitioner Ethan Anderson with six counts, in connection with events that occurred on or about January 8, 2015:

(1)  trafficking in amphetamine or methamphetamine, 28 grams or more, less than 200 grams, a life felony, in violation of sections 893.135(1)(f)1.b., 775.087(1), and 775.087(2)(a), Florida Statutes;

(2)  possession of a firearm by a convicted felon, a second degree felony, in violation of sections 790.23(1)(e) and 775.087(2), Florida Statutes;

(3)  grand theft of a firearm, a third degree felony, in violation of sections 812.014(1)(a)-(b) and (2)(c)5., Florida Statutes;

(4)  resisting an officer without violence, a first degree misdemeanor, contrary to section 843.02, Florida Statutes;

(5)  possession of a controlled substance (less than 20 grams of cannabis), a first degree misdemeanor, in violation of sections 893.13(6)(a)-(b), Florida Statutes; and

(6)  possession of drug paraphernalia, a first degree misdemeanor, in violation of section 893.147(1), Florida Statutes.

Ex. 2 at 7-8.[1]  Anderson proceeded to a jury trial on December 15, 2015.  Ex. 9 at 27-177 (trial transcript).  Anderson did not testify at the trial.  *Id*. at 129-

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No.10.

32.  The jury found him guilty as charged on Counts 1, 4, 5, and 6.  Ex. 7 at 129-30; Ex. 9 at 174-76.  On Count 1, trafficking in methamphetamine, the jury specifically found Anderson actually possessed a firearm.  Ex. 7 at 129; Ex. 9 at 175.  The court proceeded directly to sentencing, Ex. 9 at 177-88, and in a written judgment and sentence rendered December 17, 2015, the judge adjudicated Anderson guilty and sentenced him to a total of forty (40) years in prison, with a minimum mandatory term of ten (10) years, Ex. 2 at 9-16.  The State nolle prossed Counts 2 and 3.  Ex. 2 at 9; Ex. 9 at 180, 181.

Anderson appealed to the First District Court of Appeal (First DCA), assigned case number 1D15-5915.  Ex. 4.  Through counsel, he filed an Initial Brief raising one point:  "The trial court erred by making comments during sentencing that suggested Appellant's sentence was at least in part the result of his decision to exercise his constitutional rights."  Ex. 12 at i. The State filed an Answer Brief.  Ex. 13.  Anderson filed a Reply Brief.  Ex. 14.  On June 26, 2017, a panel of the First DCA, consisting of Judges Wetherell, Osterhaus, and M.K. Thomas, affirmed the conviction and sentence without a written opinion.  Ex. 15; Anderson v. State, 227 So. 3d 566 (Fla. 1st DCA 2017) (table).

On July 12, 2017, Anderson filed a petition for habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel, assigned

case number 1D17-2844.  Ex. 17.  The State filed a response.  Ex. 19.
Anderson filed a reply.  Ex. 20.  On March 15, 2018, a panel of the First DCA,
consisting of Judges Wetherell, Rowe, and Jay, denied the petition on the
merits, without elaboration.  Ex. 21; Anderson v. State, 242 So. 3d 1054 (Fla.
1st DCA 2018) (table).

On October 26, 2018, Anderson filed a pro se Motion to Correct
Sentencing Error, pursuant to Florida Rule of Criminal Procedure 3.800(a).
Ex. 23.  In an order rendered December 26, 2018, the state court summarily
denied the motion.  Ex. 24.  In the order, the court also directed the Clerk of
Court to correct a scrivener's error on the second page of Anderson's written
Judgment and Sentence to reflect the imposition of a 10-year minimum
mandatory term due to the possession of a firearm and remove the reference
to the imposition of a minimum mandatory term for the drug trafficking
offense.  *Id*.; *see* Ex. 25 (Amended Order of Judgment and Sentence).
Anderson appealed to the First DCA, assigned case number 1D19-0681,
and he filed an initial brief, Ex. 28.  *See* Exs. 26-27.  On July 22, 2019, a
panel of the First DCA, consisting of Judges Wolf, Roberts, and Jay, per
curiam affirmed the case without a written opinion.  Ex. 29; Anderson v.
State, 276 So. 3d 264 (Fla. 1st DCA 2019) (table).  The mandate issued
August 19, 2019.  Ex. 29.

In the meantime, on September 5, 2018, Anderson filed a pro se Motion for Postconviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850.  *See* Ex. 32; ECF No. 10 at 6.  He filed a second Rule 3.850 motion on October 5, 2018.  *See* Ex. 33; ECF No. 10 at 7.  By order on March 25, 2019, the state postconviction trial court struck the motions as "insufficiently pled" and allowed time for filing an amended motion.  Ex. 34.  On May 22, 2019, Anderson filed an amended Rule 3.850 motion.  Exs. 35-37.  By order rendered September 10, 2020, the court summarily denied relief.  Ex. 39.  Anderson appealed to the First DCA, assigned case number 1D20-3212, and his attorney filed an initial brief.  Ex. 40.  The State filed an answer brief.  Ex. 41.  On July 14, 2021, a panel of the First DCA, consisting of Judges Lewis, Osterhaus, and M.K. Thomas, per curiam affirmed the case without a written opinion.  Ex. 42; Anderson v. State, 322 So. 3d 48 (Fla. 1st DCA 2021) (table).  The mandate issued August 11, 2021.  Ex. 42.

On February 16, 2022, Anderson's counsel filed his § 2254 petition.  ECF No. 1.  The petition presents seven grounds, six of which allege ineffective assistance of counsel (IAC):

   (1) **Trial Court Error – Sentence**:  "The Petitioner's Due Process rights under the United States Constitution were violated when the state court improperly imposed a sentence that was imposed at least in part the result of his decision to exercise his constitutional rights."  *Id*. at 5.

(2) **IAC – No Motion for Mistrial after Facts not in Evidence**: "The Petitioner's right to effective assistance of counsel was violated when counsel failed to move for a mistrial after the State argued facts not in evidence during trial." *Id*. at 7.

(3) **IAC – No Motion to Suppress**: "The Petitioner was denied his constitutional right to effective assistance of counsel when counsel failed to file a motion to suppress" regarding tampered evidence. *Id*. at 9.

(4) **IAC – No Motion for Mistrial after Comment on Right to Remain Silent**: "The Petitioner was denied his constitutional right to effective assistance of counsel when counsel failed to move for a mistrial after the State commented on the Petitioner's right to remain silent." *Id*. at 11.

(5) **IAC – Judgment of Acquittal Motion**: "The Petitioner was denied his constitutional right to effective assistance of counsel when counsel failed to argue a legally and facially sufficient motion for judgment of acquittal at the close of the State's case." *Id*. at 12.

(6) **IAC – Failure to Investigate**: "The Petitioner was denied his constitutional right to effective assistance of counsel when counsel failed to investigate the facts surrounding his case before trial, which would have led him to file a motion to suppress." *Id*. at 14.

(7) **IAC – Inadequate Cross-Examination**: "The Petitioner was denied his constitutional right to effective assistance of counsel when counsel failed to adequately cross-examine a key witness for the State and effectively impeach her testimony concerning the Petitioner's possession of a firearm." *Id*. at 16.

On July 19, 2022, Respondent filed an answer, with exhibits. ECF No. 10.

Petitioner filed a reply on August 26, 2022. ECF No. 13.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id*.

For ineffective assistance of counsel (IAC) claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that

standard." *Id.* It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

## Ground 1:  Trial Court Error – Sentence

In his first ground, Petitioner Anderson asserts the state trial court violated his due process rights when it "improperly imposed a sentence that was imposed at least in part the result of his decision to exercise his constitutional rights." ECF No. 1 at 5.  In particular, Anderson explains that he had filed numerous motions alleging ineffective assistance from appointed counsel, asking for new representation, asking for the court to allow him to represent himself, and seeking suppression of evidence. *Id*. at 5-6.  At sentencing, the trial judge stated, among other things, that Anderson had shown "utter disregard for the judicial and the legal system" and the judge did not "like people who play games." *Id*. at 6.  The judge sentenced him to 40 years in prison, with a minimum mandatory of 10 years. *Id*.

Specifically, as reflected in the record transcript, the following occurred during sentencing:

THE COURT:  All right.  What is the State seeking?

MS. SHEA [prosecutor]:  Well, we nolle prossed the possession of a firearm by a convicted felon really for the convenience of the Court and saving the taxpayers money.  I mean, he's obviously already a convicted felon and the jury obviously found that he was in possession of a firearm.  We are dealing with a very large, for this area, it is a very large amount of methamphetamine and

you will also know if you paid any attention to the news and I guess just the traffic comes in and out of the courtroom, we have a problem with guns in this area. We have a problem with shootings in this area. . . . We have a problem with drug deals going bad and people getting killed and it's really outrageous just for this very small town.

Now, in this case, obviously Mr. Anderson wasn't shooting up anything, but he's a convicted felon. He had a loaded firearm, and you know, $7,000 worth of drugs in his possession with the other paraphernalia necessary to package that and resell it. So that's a serious offense. It's a life felony. He is exposed to life on this charge, but because of the types of drugs, the amount and the nature of the firearm, the State would ask for no less than 30 years in the State prison with a 10-year mandatory minimum.

THE COURT: Mr. Early.

MR. EARLY [defense counsel]: Your Honor, we would ask the Court to consider that 10-year mandatory minimum is 10 years day for day. So there would be no gain time. That would give Mr. Anderson ample time to think about where his life is going and what he wants it to be, where he wants to be in that 10 years. When he gets out of prison and he's a relatively young man, Your Honor. I believe him to be 30 years-old. In 10 years he would be 40 years-old. There is still a chance he could become a relatively productive member of society. Stranger things have happened and people turn their life around once they go into the serious prison route.

Obviously, he's got to do at least 10 years day for day, but after that he could be productive. So we would ask that rather than the 30 years that the State is asking for. Thirty years will put him at 60 when he gets out, if he lived that long in prison. Then he wouldn't be use to anybody or anything and that would be all he knew. So we would ask for the 10 years, Your Honor.

MS. SHEA: Could I respond briefly?

THE COURT: Yes.

MS. SHEA:  We have been in court with Mr. Anderson a number of times.  He's shown absolutely no remorse.  He's shown absolutely no responsibility for any of these things.  He's maintained that he's not guilty, which he's entitled to do, but he's gone farther than that and tried to get his lawyers to find loopholes for him and now asking for leniency on that.  He's never accepted responsibility and he's never made an admission that he did any of this and it's very obvious that he did and so I'll just leave it at that.

THE COURT:  Let's review.  It's three o'clock in the morning, an officer is in a high crime area and the only car on the road beside his, passes him in the opposite direction.  His window is down.  And he looks and he sees the license tag and he runs it on his computer in his car.  Totally, absolutely routine.  Comes up that the license tag doesn't match the car.  So he proceeds to investigate.  The Defendant is next seen next to the car, taking stuff out of the car and then he's next seen behind the car, walks out from behind the car, stopped by one officer.  When the second officer walks behind the car, sees a bag, a bag that has methamphetamine showing and the gun.  The methamphetamine is enough to constitute dealing.  So we are not talking about a mom and pop operation.  We are talking about serious criminals.  The gun has the Defendant's fingerprints on it and DNA.  There is other drugs and drug paraphernalia in the car.  The car is locked and the keys to the car are on the Defendant.

And the Defendant, rightfully so, wants to assert all of his rights.  So we have a hearing on his Motion to Suppress, even though his attorney does not believe there is a good faith basis for it, but I bring the officer in and I make the officer testify and I listen to the testimony and rule that the Motion to Suppress is to be denied.  Mr. Anderson goes between having an attorney and wanting a Nelson hearing, having an attorney and wanting a Nelson hearing, having a trial, not having a trial, having a trial and not having a trial, showing utter disregard for the judicial and the legal system.  It's one thing to assert all your rights, it's another thing to play games.  I don't like people who play games.

You want to make a statement?  Do you understand you don't have to?  Do you understand it's being recorded, but if you want to make a statement, go ahead.

THE DEFENDANT:  I would like to make a statement that the argument for my suppression, it was a good argument because first of all, the officer sit there and lied in the suppression and even said that he was in front of me and he did a U-turn, but now he's changing his story up about that was in another turning lane.  He never ran my tag.  I put in a subpoena for his records for computer.  If he had the records of that (unintelligible) the evidence people be pulled in and that he has evidence that he did all that, but I know for a fact he never ran my tag and that was for the stop and why if he approached me, why did he stop they and say sir, please stop right there about your tag, but none of that.  They never said anything to me.

THE COURT:  How do you know for a fact that he never ran your tag?

THE DEFENDANT:  He never ran my tag.  How you going to run my tag and you are in front of me?

THE COURT:  Wait a minute.  You are telling me that you know for a fact that he never ran your tag?

THE DEFENDANT:  He never ran my tag.

THE COURT:  I'm trying to find out what the source of your information is.

THE DEFENDANT:  He never ran my tag.  This is what the reports said he ran the tag at 2:55.  If he ran in the computer, why would you run it then again, if you did it on your laptop?  Where is those records to prove that?  Because he never ran my tag to get up behind me.  When he did the U-turn, he said he was 2 feet away.  How you are going to be 2 feet away.  That is reckless driving.

THE COURT:  Okay.  That is your argument.  You want the legal

system to let you walk away on a technicality on your feelings of it's not possible.  Although it's perfectly possible, reasonable, logical.  And the officer's testimony today was the same as the testimony at the suppression hearing.  And you are carrying around enough methamphetamine to get a lot of people in trouble.  And a gun.  And you seem to lose sight of that fact, but be that as it may.

All right.  I'm going to sentence you on Count 1 to 40 years' state prison with a ten year minimum mandatory.

Count 2 – are these first degree misdemeanors?

MS. SHEA:  Yes.  Counts 4, 5 and 6.  Yes.

THE COURT:  Counts 4, 5 and 6 will be 11/30 county jail each and those will be concurrent with Count 1.

Ex. 9 at 181-87.  Neither Anderson nor his attorney made any other arguments or objections.  *See id*. at 187-88.

As both Petitioner and Respondent indicate, and as set forth in the procedural background, *supra*, Anderson raised this claim as the only point in his direct appeal:  "The trial court erred by making comments during sentencing that suggested Appellant's sentence was at least in part the result of his decision to exercise his constitutional rights."  Ex. 12 at i; *see* ECF No. 1 at 6; ECF No. 10 at 17.  Because Anderson did not object at sentencing, the argument asserted fundamental error.  *See* Ex. 12 at 8; Ex. 13 at 8.

The Eleventh Circuit has indicated that "the fundamental error question is an issue of state law, and state law is what the state courts say it is."

Pinkney v. Secretary, Dep't of Corr., 876 F.3d 1290, 1299 (11th Cir. 2017). In Pinkney, the Eleventh Circuit explained that when the state appellate court has denied a claim of ineffective assistance based on appellate counsel's failure to raise an unpreserved error, the appellate court "has already determined, albeit implicitly, that the error was not fundamental error," and the Eleventh Circuit "must defer to the 'Florida court's underlying determinations of state law.'" *Id*. at 1297-98.  The Eleventh Circuit further explained that the state appellate court would have granted relief "if it had decided that the instruction error was fundamental error ... because if the error was fundamental, the direct appeal court could have decided the issue on the merits, which would mean that appellate counsel's failure to raise the issue was ineffective assistance of counsel."  *Id*. at 1298-99.

Similarly, in this case, the First DCA rejected Anderson's argument, raised as fundamental error, that the trial court considered impermissible factors in sentencing him.  Thus, the state appellate court necessarily determined Anderson had not demonstrated reversible fundamental error by the trial court in sentencing.  This constitutes an adjudication entitled to deference under 28 U.S.C. § 2254(d).  *See* Richter, 562 U.S. at 99.

This Court must defer to the state court's interpretation of its own law: "a state court's interpretation of state law ... binds a federal court sitting in

habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Indeed, "[i]n the area of state sentencing guidelines in particular," the Eleventh Circuit has "consistently . . . held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988). *Cf*. Echols v. Thomas, 33 F.3d 1277, 1279 (11th Cir. 1994) ("Although Echols' sentencing claim ultimately turns on a question of State law, it properly falls within the scope of federal habeas corpus review because 'the eighth amendment bars a prison sentence beyond the legislatively created maximum.'"). Thus, this ground may be denied as it is not reviewable in federal habeas. *See, e.g.*, Barrick v. Att'y Gen., State of Fla., No. 6:08cv835-Orl-31KRS, 2009 WL 2905603 at *3 (M.D. Fla. Aug. 31, 2009) (order by district judge denying § 2254 petition: "Petitioner argues that the trial court erred by relying on impermissible factors when imposing sentence. This Court expresses no opinion on the state trial court's interpretation of Florida law, and it would be inappropriate to conduct an examination of Florida sentencing law. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." (citations omitted, including citations to Branan)); Chambers v. Sec'y Dep't of Corr., No. 8:06cv2013-T-17MAP, 2008 WL 2741809 at *4 (M.D. Fla. July 10, 2008) (order by district

judge denying § 2254 petition:  "Chambers contends that the trial court erred in relying on impermissible factors in sentencing him.  This claim is a state law sentencing issue which provides no basis for federal, constitutional habeas corpus relief. . . . Federal courts cannot review a state's failure to adhere to its own sentencing procedures, even if Chambers sets out his claims as ones of equal protection or due process.  Ground one does not warrant habeas relief." (citations omitted, including citations to Branan)).  *See also, e.g.*, Jenkins v. Dixon, No. 4:21cv219-AW/MJF, 2022 WL 10198982 at *12 (N.D. Fla. Sept. 23, 2022) (report and recommendation to deny § 2254 petition, citing Echols and Branan, and explaining:  "The only context in which the Eleventh Circuit has found that a state prisoner's sentencing claim is cognizable on federal habeas review is when the prisoner claims his sentence exceeds the statutory maximum. . . . Absent an allegation that the sentence exceeds the statutory maximum, 'federal courts can not [sic] review a state's alleged failure to adhere to its own sentencing procedures.'" (citations omitted)), *adopted by order of district judge*, 2022 WL 10198558 (Oct. 17, 2022).

Assuming this ground is reviewed in federal habeas, under Florida law, "[f]undamental error occurs where a trial court considers constitutionally impermissible factors when imposing a sentence." Yisrael v. State, 65 So.

3d 1177, 1177 (Fla. 1st DCA 2011). In Florida, at the time of Petitioner's offense and sentencing in 2015, a trial court generally could not consider or use against a defendant his assertion of innocence, refusal to admit guilt, lack of remorse, or failure to accept responsibility. *See, e.g.*, Wood v. State, 148 So. 3d 557, 557 (Fla. 1st DCA 2014) ("Our precedents make clear that a sentence conditioned, even in part, on a defendant's lack of remorse and claim of innocence violates due process and warrants remand for resentencing before a new judge."); Jackson v. State, 39 So. 3d 427, 428 (Fla. 1st DCA 2010) (vacating sentence and remanding for resentencing before different judge "because the trial court's remarks immediately before pronouncing the sentence are reasonably construed as affirmatively punishing Jackson for failing to show any remorse or regret for any of his actions, thereby denying due process and fundamentally erring"); Ritter v. State, 885 So. 2d 413, 414 (Fla. 1st DCA 2004) (holding that reliance on lack of remorse violates due process).

Notably, however, during this same time period, the First DCA had also issued at least one opinion indicating that just because a sentencing judge mentions a defendant's claim of innocence or lack of responsibility, this does not mean the sentence was constitutionally invalid. *See* Hayes v. State, 150 So. 3d 249 (Fla. 1st DCA 2014). In Hayes, the court affirmed the sentences,

finding "the record does not support Appellant's assertion that his sentences were imposed as punishment for his exercise of his constitutional rights."  *Id.* at 250.  The court explained, in pertinent part:

> While it is fundamental error to punish a defendant for exercising his or her constitutional rights, we decline to hold that any mention by a sentencing judge of a defendant's claim of innocence or failure to "take responsibility" during a sentencing hearing automatically renders the sentence an infringement of the defendant's constitutional right to maintain one's innocence. In this case, the record shows that the sentence was based on the valid grounds of Appellant's stipulated and unchallenged status as an HFO.  The trial court specifically stated that Appellant *was not* being punished for maintaining his innocence, in response to a suggestion by defense counsel that such punishment would be illegal.  Although the trial court surprised that Appellant maintained his innocence for appellate reasons and the possibility of future re-trials, and observed that Appellant had not shown any remorse or taken responsibility for "what he has done" over his lengthy criminal history, the court discounted these factors as affecting the sentence by stating immediately thereafter:  "But be that as it may, Mr. Hayes is an habitual felony offender."  The transcript of the sentencing hearing in this case does not give rise to a presumption that the sentence was imposed as a punishment for Appellant's exercise of his constitutional rights.

150 So. 3d at 252.  The court also noted that Hayes' sentence "did not exceed the statutory maximum of thirty years and did not depend on statutory aggravating or mitigating factors."  *Id.* at 251.

Further, in 2019, the First DCA receded from the view that remorse could be considered only in mitigation, holding instead that "lack of remorse and refusal to take responsibility can be valid sentencing considerations

when sentencing within the statutory range."  Davis v. State, 268 So. 3d 958, 961 (Fla. 1st DCA 2019) (en banc), *approved*, 332 So. 3d 970 (Fla. 2021). In Davis, the sentencing judge had stated, "[C]onsidering your history here, your failure to take any responsibility, the nature of the crime, the fact that it involves a firearm the Court will sentence you to 15 years . . . , which is the statutory maximum."  268 So. 3d at 962.  The First DCA's Davis opinion includes an acknowledgement that "federal and state courts have frequently said, '[i]t is well established that a sentencing judge may consider lack of remorse when imposing a sentence.'"  *Id*. (quoting United States v. Johnson, 903 F.2d 1084, 1090 (7th Cir. 1990)).  "In fact, Florida sentencing statutes explicitly authorize consideration of remorse and responsibility" and "[t]he commonsense approach of considering a defendant's remorse – or willingness to take responsibility – fits with the Legislature's command that each sentence be not only commensurate with the severity of the offense but also fashioned in light of 'the circumstances surrounding' it."  *Id*. at 963; *see* § 921.002(1)(c), Fla. Stat.  The court also explained that "[a] defendant's remorse or willingness to accept responsibility comprises part of the whole picture" as "[t]hese factors speak to a defendant's character and to the defendant's potential for rehabilitation."  Davis, 268 So. 3d at 964.  The court pointed out that sentencing judges may not punish defendants for exercising

their jury-trial rights. *Id*. at 967-68 ("A defendant may still challenge a sentence not exceeding the statutory maximum, if he can 'argue that his sentence was a result of vindictiveness.'").

In its review of the appeal in this case for fundamental error, the First DCA could reasonably have concluded the case was more like its decision in Hayes than its decisions in Ritter, Jackson, and Wood. Despite the trial court's perhaps questionable comments regarding Anderson's assertions of his constitutional rights and the judge's dislike of "people who play games," nothing in the record specifically indicates the court considered impermissible factors in sentencing Anderson to 40 years in prison. The State had asked for "no less than 30 years in the State prison with a 10-year mandatory minimum." Ex. 9 at 182. Defense counsel had asked for 10 years. *Id*. at 182-83. As indicated in the quoted portion from the sentencing transcript above, the judge reviewed the circumstances that led to the charges. *Id*. at 184. The prosecutor and the trial judge recited numerous instances in which Anderson had attempted to contest the charges, discharge his counsel, represent himself, not go to trial, and so on, and the judge indicated Anderson wanted "to assert all his rights" and "rightfully so," though the judge stated he did not "like people who play games." *Id*. at 184-85. Anderson then chose to make a statement at sentencing. *Id*. at 185-86.

*See* <u>Davis</u>, 332 So. 3d at 977 (approving the First DCA's en banc decision and holding "that when a defendant voluntarily chooses to allocute at a sentencing hearing, the sentencing court is permitted to consider the defendant's freely offered statements, including those indicating a failure to accept responsibility").

When the judge announced the sentence, he focused on Anderson "carrying around enough methamphetamine to get a lot of people in lot of trouble" as well as "a gun," and Anderson "seem[ed] to lose sight of that fact." *Id*. at 186-87.  The imposed sentence fell within the possible range – up to life in prison – and has not been shown to have been based on any constitutionally impermissible factors.    *See* <u>Davis</u>, 332 So. 3d at 977 ("Whether a defendant says nothing at sentencing or takes full responsibility and is able to show that he is a pillar of the community, a judge retains the discretion to impose the maximum sentence."); §§ 893.135(1)(f)1.b., Fla. Stat. (2014) (providing that "trafficking in amphetamine" in amount of 28 grams or more and less than 200 grams constitutes first degree felony); 775.087(1) (providing that "whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm,

. . . the felony for which the person is charged shall be reclassified as . . . [i]n the case of a felony of the first degree, to a life felony"); *see also* § 921.002(1), Fla. Stat. (2014) (indicating Florida's Criminal Punishment Code embodies principles including:  (b) "[t]he primary purpose of sentencing is to punish the offender" and [r]ehabilitation is a desired goal of the criminal justice system but is subordinate to the goal of punishment," (c) "[t]he penalty imposed is commensurate with the severity of the primary offense and the circumstances surrounding the primary offense," and (g) "[t]he trial court judge may impose a sentence up to and including the statutory maximum for any offense").

Based on the foregoing, the First DCA's denial of the fundamental error claim cannot be said to be contrary to any clearly established federal law as determined by the United States Supreme Court or that it was an unreasonable determination based on the record.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## Ground 2:  IAC – No Motion for Mistrial after Facts not in Evidence

In his second ground, Petitioner Anderson asserts trial counsel provided ineffective assistance "by fail[ing] to move for a mistrial after the State argued facts not in evidence during trial."  ECF No. 1 at 7.  This claim involves the trial testimony of Investigator Kenneth Tolbirt and his reference

to Mexican methamphetamine.  *Id*.  Both Petitioner and Respondent indicate

Anderson raised this claim as the first ground in his Rule 3.850 motion.  Ex.

35 at 92-95; *see* ECF No. 1 at 7; ECF No. 10 at 27.  The state post-conviction

trial court denied the claim, making the following findings:

> In his first claim, Defendant alleges that his counsel was ineffective for failing to preserve for appeal certain testimony regarding the source of the methamphetamine at issue.  He alleges that State witness, Investigator Kenneth Tolbirt, was erroneously allowed to suggest by his testimony that Defendant was trafficking in drugs from Mexico, and that counsel should have objected to the testimony.  The State's closing argument at issue was as follows:
>
> > Investigator Tolbirt identified this for you as being what they call Mexican meth manufactured in large quantities and it's a quantity that used to be manufactured in Mexico.  Sometimes it is done here. A lot of that comes over the border.  But in any event, it's not the kind that is done with the battery acid in someone's garage.  Okay.  And it's rare in this area to have this quantity, but these are the exact same things.
>
> [Ex. 9 at 144.]  Defense counsel objected, stating, "Facts not in evidence," but the Court overruled the objection.  [*Id*.]  Defendant claims in his motion that it is "obvious the State intended to persuade the Jury that the Defendant was trafficking meth from Mexico."
>
> The relevant testimony from the investigator was given while describing two different types of methamphetamine:
>
> > Q:   What type of these two categories of methamphetamine would you say that falls into?

A:     This is what we call, and it's just a slang term[,] we call it Mexican ice.  It doesn't necessarily mean it came from Mexico.  Like I said, there is what we call super labs in the United States, mostly in the western area of the United States, but this is called ice or crystal ice and it's produced in large quantities.

Q:     So this is not the shake and bake method in the garage?

A:     No ma'am.  This was produced from what we call super labs.

[Ex. 9 at 82-83.]

As is acknowledged in Defendant's motion, defense counsel did object to the State's argument, and Defendant's present claim appears to be based partly on counsel's failure to object to the testimony itself, as well as the failure to move for a mistrial during closing argument.

In either case, Defendant has failed to demonstrate proper prejudice.  He has made no showing under Strickland of a reasonable probability of a different result at his trial had counsel objected to the testimony or moved for a mistrial.  Even assuming the origin of the drugs would have some bearing on the jury's decision-making process, which is entirely speculative, the investigator specifically stated that the term "Mexican ice" did not mean the drugs came from Mexico.  The prosecutor also acknowledged in his closing argument that sometimes this type of methamphetamine "is [made] here."  Defendant has not shown that either an objection to the testimony or a motion for mistrial would have resulted in a different outcome at his trial.  To the extent that Defendant asserts as prejudice that he was "deprived of his appellate rights," this too, is inadequate.  "The failure to preserve a potentially reversible error for appeal has been found to constitute ineffective assistance of counsel, sufficient to

> support a rule 3.850 motion.  The movant, however, has the difficult burden of demonstrating prejudice under <u>Strickland v. Washington</u>, 466 U.S. 668 . . . (1984)."  <u>Ellington v. State</u>, 841 So. 2d 646, 647 (Fla. 2d DCA 2003) (citations omitted). Defendant has failed to meet this burden, and he is not entitled to relief on this claim.

Ex. 39 at 4-5 (footnotes omitted).  On appeal, the First DCA per curiam affirmed the case without a written opinion.  Ex. 42; <u>Anderson v. State</u>, 322 So. 3d 48 (Fla. 1st DCA 2021) (table).  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* <u>Richter</u>, 562 U.S. at 99; <u>Wright</u>, 278 F.3d at 1254-55.  A review of the record supports the state courts' determination.  *See* <u>Wilson</u>, -- U.S. --, 138 S. Ct. at 1192.

Specifically, the record references in brackets in the quoted portions of the order, above, support the court's findings regarding the prosecutor's closing argument, defense counsel's objection, and the testimony of Investigator Tolbert.  Further, as the state post-conviction court explained, Petitioner's argument that the potentially misunderstood geographic origin of the drugs had some bearing on the jury is entirely speculative, and the investigator specifically testified that the term "Mexican ice" did not necessarily mean the drugs came from Mexico.  Petitioner has not shown that an objection to the investigator's testimony or a motion for mistrial would have resulted in a different outcome at the trial.  Defense counsel cannot be

deficient by failing to present a non-meritorious objection or motion.  *See, e.g.*, Pinkney, 876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (concluding that counsel was not ineffective for failing to raise non-meritorious objections); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Based on the foregoing, Petitioner Anderson has not shown the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## <u>Ground 3</u>:  IAC – No Motion to Suppress

In his third ground, Petitioner Anderson asserts his trial counsel provided ineffective assistance by "when counsel failed to file a motion to suppress" regarding tampered evidence.  ECF No. 1 at 9.  Both Petitioner and Respondent indicate Anderson raised this claim as the second ground

in his Rule 3.850 motion.  Ex. 35 at 95-101; *see* ECF No. 1 at 10; ECF No. 10 at 33.  The state post-conviction trial court denied the claim:

> In his second claim, Defendant asserts that his counsel was ineffective for failing to move to "suppress tampered evidence."  He points out that Deputy Kyle Haver's report [, Ex. 2 at 25,] stated that he found 55.2 grams of methamphetamine under Defendant's car and 3.9 grams inside the car.  As Defendant recites in his motion, the FDLE lab analyst, Michelle DePaola [Ex. 9 at 85], subsequently testified that she examined the packaging of these drugs and made sure the seals were intact before opening the evidence [, *id*. at 88].  She then testified as follows:

> > Q.    And you weighed [the evidence]?

> > A.    Yes.  Once I opened the evidence, I weighed the evidence. . . .

> > Q.    And what were your conclusions?

> > A.    The first exhibit weighted 54.06, plus or minus 0.13 grams and the second weighted 4.14, plus or minus 0.13 grams.

> > Q.    Plus or minus is your margin of error, right?

> > A.    Not really.

> > Q.    Describe what it is exactly.

> > A.    Not really a margin of error.  It is called the uncertainty.  It takes into account environmental factors that may affect the weight very slightly.  So it encompasses things like humidity and temperature and the specific balance, the person that is weighing the balance, and it insures that the weight that we get from the balance is more accurate that way.

[*Id.* at 88-90.]

Defendant asserts that, based on the weight discrepancy, the physical evidence was tampered with, and also "improperly moved by a traffic officer," rather than by a crime scene technician.  As a result, he claims his counsel should have filed a motion to suppress the drugs.

Defense counsel cannot be deemed ineffective for failing to file a motion to suppress when existing case law would not require suppression.  Ramos v. State, 559 So. 2d 705 (Fla. 4th DCA 1990).  To bar the introduction of otherwise relevant evidence due to a gap in the chain of custody, a defendant must show there was a probability of tampering with the evidence.  A mere possibility of tampering is insufficient.  Nieves v. State, 739 So. 2d 125 (Fla. 5th DCA 1999); Jordan v. State, 707 So. 2d 816 (Fla. 5th DCA), *approved on other grounds*, 720 So. 2d 1077 (Fla. 1998); State v. Taplis, 684 So. 2d 214 (Fla. 5th DCA 1996), *rev. dismissed*, 703 So. 2d 453 (Fla. 1997); Davis v. State, 788 So. 2d 308, 310 (Fla. 5th DCA 2001).

Defendant has made no showing that the mere fact that the officer initially picked up the packets of drugs, rather than an evidence technician, provides any basis for suppression.  The officer testified to the facts surrounding the collection [Ex. 9 at 57-67], and the analyst confirmed that the evidence was sealed and initialed prior to her testing [*id.* at 88-90].  Defendant has shown no break in the chain of custody or any other information relevant to the collection of the evidence which would support a motion to suppress.

Defendant's argument regarding the slight difference in weight is similarly unavailing.  The difference in the weight of the first package was 1.14 grams; the second, .24 grams.  The analyst explained at trial that environmental factors could influence the weight, as noted above.  [Ex. 9 at 90.]  Deputy Haver also indicated in his report [Ex. 2 at 25], attached by Defendant, that the items were weighed on a digital scale, which presumably was not the same scale used by the professional lab analyst in a controlled environment.  The Court does not find

these to be "gross discrepancies" of the type which would support a finding of a reasonable probability of tampering. *See, e.g.*, Dodd v. State, 537 So. 2d 626 (Fla. 3d DCA 1988) (difference of approximately 68 grams in measured weight and conflicting descriptions of evidence bag were sufficient to indicate probable tampering). The Court concludes that defense counsel did not perform deficiently, nor can Defendant show prejudice in that it does not appear that a motion to suppress the evidence would have been appropriately granted. Defendant is not entitled to relief on this basis.

Ex. 39 at 5-7 (footnotes omitted). On appeal, the First DCA per curiam affirmed the case without a written opinion. Ex. 42; Anderson v. State, 322 So. 3d 48 (Fla. 1st DCA 2021) (table). This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55. A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

Specifically, the record references in brackets in the quoted portions of the order, above, support the postconviction court's findings regarding the testimony of the FDLE lab analyst and Deputy Haver as well as the deputy's report. As the court determined, that the deputy, and not an evidence technician, collected the drugs does not provide a basis for suppression of the evidence, and Petitioner did not demonstrate any break in the chain of custody, or any other issue relevant to the collection of the evidence, that would have supported a motion to suppress.

Further, Anderson's argument concerning the slight difference in weight of the drugs likewise would not have warranted suppression. The court found "[t]he difference in the weight of the first package was 1.14 grams; the second, .24 grams." Ex. 39 at 7. As the court explained, the analyst testified that environmental factors could influence the weight. *Id*.; *see* Ex. 9 at 90. The court also explained that the deputy indicated in his report that the items were weighed on a digital scale, *see* Ex. 2 at 25, and this presumably was not the same scale used by the analyst. The postconviction court thus determined the differences in weight did not constitute "gross discrepancies" that would support a finding of a reasonable probability of tampering. *Cf*. Dodd v. State, 537 So. 2d 626, 628 (Fla. 3d DCA 1988) (explaining that difference of approximately 68 grams in measured weight and conflicting descriptions of evidence bag were sufficient to indicate probable tampering); *see also, e.g.*, Davis v. State, 89 So. 3d 1124, 1125-26 (Fla. 2d DCA 2012) (citing Dodd and reversing denial of IAC claim for evidentiary hearing or record attachments where "Davis alleged that the total weight of the suspected marijuana and crack cocaine shown in the police reports was 223.4 grams and 4.8 grams, respectively, whereas the results of the lab analysis showed 101.0 grams and 0.9 grams" and "the record before us does not refute Davis's claim that the suspected drugs were

tampered with and that trial counsel failed to address the apparent tampering"). Accordingly, the court concluded that Petitioner had not shown deficient performance or prejudice as "it does not appear that a motion to suppress the evidence would have been appropriately granted." Ex. 39 at 7.

Based on the foregoing, Petitioner Anderson has not shown the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

### Ground 4: IAC – No Motion for Mistrial after Comment on Right to Remain Silent

In his fourth ground, Anderson asserts his trial counsel provided ineffective assistance by not "mov[ing] for a mistrial after the State commented on [his] right to remain silent." ECF No. 1 at 11. As Petitioner and Respondent indicate, Anderson raised this claim in the fourth ground of his Rule 3.850 motion. Ex. 35 at 104-07; *see* ECF No. 1 at 11; ECF No. 10 at 36, 40. The state postconviction trial court denied the claim, making the following findings:

> In his fourth claim, Defendant asserts that his counsel was ineffective for failing to preserve for appellate review a comment on his right to remain silent. The following exchange is at issue:

State:        The police weren't nagging him.  He
              didn't want to be caught by the police and
              that is an indication, that's a – we term
              and call that consciousness of guilt.  He
              knows that they are going to find
              something over there.

Defense:      Objection, Your Honor.   May we
              approach? (At the bench):  Your Honor,
              for the record, I object.  I believe it was
              close to a comment on the Defendant's
              right to remain silent but the
              consciousness of guilt.  He didn't want to
              talk to the police.  He has a right not to
              talk to them, maybe not to run from them
              unless they had probable cause.

State:        Every case you have somebody runs we
              argue consciousness of guilt because
              that is what it is and it doesn't have
              anything to do with the defendant's right
              to remain silent.

The Court:  Overruled.

[Ex. 9 at 140-41.]

First, this Court does not conclude that the State's
argument was a comment on the right to remain silent.
Observing that Defendant ran away to avoid the police does not
suggest any improper reference to his invocation of his right to
remain silent.  Furthermore, counsel did in fact object, and the
objection was overruled.  Defendant asserts, however, that he
should also have moved for mistrial in order to preserve the issue
for appellate review.  First, given that the trial court did not
sustain the objection, it is unlikely that a motion for mistrial would
have been granted, and thus Defendant cannot show a likelihood
of a different result at trial.  Secondly, this would be unnecessary
to preserve the matter for review.  "We hold that where a timely
objection is made to an improper comment concerning

> defendant's right to remain silent, and the objection is overruled, thus rendering futile a motion for mistrial, the issue of the admission of such comment is properly preserved for appeal." <u>Simpson v. State</u>, 418 So. 2d 984, 987 (Fla. 1982). Defendant has not demonstrated deficient performance or Strickland prejudice, and he is not entitled to relief on this basis.

Ex. 39 at 9-10 (footnote omitted).

On appeal, the First DCA per curiam affirmed the case without a written opinion. Ex. 42; <u>Anderson v. State</u>, 322 So. 3d 48 (Fla. 1st DCA 2021) (table). This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* <u>Richter</u>, 562 U.S. at 99; <u>Wright</u>, 278 F.3d at 1254-55. A review of the record supports the state courts' determination. *See* <u>Wilson</u>, -- U.S. --, 138 S. Ct. at 1192.

Specifically, the record references in brackets in the quoted portion of the order, above, support the court's findings regarding the prosecutor's argument and defense counsel's objection. The court did not unreasonably conclude the comment was not one on Petitioner's right to remain silent. *See, e.g.*, <u>United States v. Blankenship</u>, 382 F.3d 1110, 1128 (11th Cir. 2004) (explaining prosecutor's statement violates defendant's right to remain silent if it was "manifestly intended to be a comment on the defendant's failure to testify" or was "of such a character that a jury would naturally and necessarily take it to be a comment" on the defendant's failure to testify

(quoting <u>United States v. Knowles</u>, 66 F.3d 1146, 1162-63 (11th Cir. 1995)).

The comment references Anderson's use of "nagging" in his recorded interview with Sergeant David Brown, played during the trial:

> Q.  [T]his is your opportunity to explain your side of the story in reference to this incident tonight and have it properly and fully documented.  If you have a defense to your arrest, here it is.  Here is your time to express your defense.  Maybe it might change things.  Maybe it doesn't.  I don't know unless you know we get to that point.  So I'm not going to pull trick bags out of my hat.  This is just me and you talking.  I'm not going to try to trick you.  Probably couldn't trick you if I wanted to.  If you are not going to talk to me, by all means just say hey, I don't want to talk and we'll just go ahead and do what we need to do from right here.  That way we are not wasting each other['s] time.  We can get you processed sooner.  If you want to talk to me [t]hen we'll see what we can do.
>
> A.  Ain't got nothing to say about nothing.
>
> Q.  Well, there is a lot of things to say about a lot of things.  There is questions that I have, obviously.
>
> A.  I didn't have no gun in my possession.
>
> Q.  Okay.  Whether it was on your person or in the vehicle you were driving –
>
> A.  He found that shit in some bushes.
>
> Q.  In some bushes?
>
> A.  Okay.
>
> Q.  Okay.  Well see I didn't know that.  I thought it was in the car.  You are telling me some things that I didn't know.  There is some information that I needed.  It wasn't in the car that you were driving.  It was in a bush.

A.  I was walking to the damn door and they pulled up on me talking about asking me some questions.

Q.  Okay.  And then what?

A.  Then he went walking by the car.

Q.  Okay.  What I'm trying to get at is at what point – did you run at some point you ran?

A.  Yeah.  Yeah.  I ran.

Q.  That is what was relayed to me he had to chase after you?

A.  Yeah.  I ran.

Q.  Okay.  If you weren't doing anything wrong, why did you run?

A.  I ran because I'm tired of police f***ing with us when we ain't got a goddamn thing, minding my own business.

Q.  Okay.

A.  I'm walking with my Waffle House food, going on in.  So what you got to question me for?

Q.  Okay.  Why did they say they stopped you?

A.  They did not say anything.

Q.  Did you give them the opportunity to explain that before you took off running?

A.  He said, I want to talk to you.

Q.  Okay.

A.  And I sat there for a second okay.  Man, I'm tired of this.

Q.  And at what point did you just say I'm going to take off running?

A.  Shit, whenever he kept nagging on, nagging on, I want to talk to you.

Q.  Okay.  And then what?

A.  Then I took off.

Ex. 9 at 125-27.

As the state postconviction court found, defense counsel did object to the prosecutor's comment, and the trial court overruled the objection. Defense counsel's objection preserved the argument for appeal.  *See* Simpson, 418 So. 2d at 987 ("Under these circumstances, where clearly a timely objection to the improper comment was made by defense counsel, and where the judge unequivocally and without hesitation overruled the objections, the issue of the admission of such testimony and comments before the jury is properly preserved for appeal.  It is evident that a motion for mistrial at either juncture in the trial where defense counsel's objections were overruled would have been futile.").  Further, as the postconviction court concluded, in this circumstance, it is not likely the trial court would have granted a motion for mistrial.  The court reasonably concluded Anderson had not shown deficient performance or prejudice.

Based on the foregoing, Petitioner Anderson has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

### Ground 5:  IAC – JOA Motion

In his fifth ground, Petitioner Anderson asserts his trial counsel provided ineffective assistance by failing "to argue a legally and facially sufficient motion for judgment of acquittal at the close of the State's case." ECF No. 1 at 12.  Anderson raised this claim in the sixth ground of his Rule 3.850 motion.  Ex. 35 at 111-17; *see* ECF No. 1 at 13; ECF No. 10 at 42. The state postconviction trial court denied the claim:

> In his sixth claim, Defendant alleges that his counsel was deficient for failing to argue and preserve an adequate motion for judgment of acquittal regarding the State's failure to prove that he "carried, displayed, used, or threatened to use a firearm."  He asserts that counsel should have filed an adequate motion for judgment of acquittal to "preserve the issue for appellate review."
>
> To present a facially sufficient postconviction claim that counsel was ineffective for failing to raise and preserve a sufficiency of the evidence claim for appeal via a timely and contemporaneous motion for judgment of acquittal, "a movant should state sufficient facts to show that '[he] may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial.'"  White v. State, 977 So. 2d 680, 681 (Fla. 1st DCA 2008).

      Defendant's claim is without merit.  A motion for judgment of acquittal would only be properly granted when directed towards an element of the offense.  As Defendant acknowledges, the evidence regarding the firearm was relevant only to the reclassification of the offense and the minimum mandatory term.  Therefore, a motion for judgment of acquittal on this basis would not have been appropriately granted, and Defendant is not entitled to relief on this basis.  *See* Jesus v. State, 565 So. 2d 1361 (Fla. 4th DCA 1990) (*disapproved of on other grounds by*, Glover v. State, 863 So. 2d 236 (Fla. 2003)).

Ex. 39 at 11-12.

On appeal, the First DCA per curiam affirmed the case without a written opinion.  Ex. 42; Anderson v. State, 322 So. 3d 48 (Fla. 1st DCA 2021) (table).  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55.  A review of the record supports the state courts' determination.  *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

The trial transcript reflects that, at the conclusion of the State's case, defense counsel moved for JOA, only as a technical matter:

> MR. EARLY:  Procedurally, Your Honor, we would ask for – motion the Court for a Judgment of Acquittal.  I have no grounds whatsoever to ask for that.  I just procedurally to preserve his right, Your Honor.
>
> THE COURT:  Very well.  Okay.  That will be denied.

Ex. 9 at 129.  Anderson claims the State failed to show he "carried, displayed,

used, or threatened to use a firearm" and if defense counsel had argued for a JOA on that basis, the court would have granted the motion.  Ex. 35 at 111-12; ECF No. 8-1 at 12.  The postconviction court found this argument is not directed to an element of the trafficking offense, but only to the reclassification of the offense and the minimum mandatory term, and the trial court would not have properly granted a JOA motion on this basis.  *See, e.g.*, Jesus, 565 So. 2d at 1363 (holding trial court properly denied JOA motion where offender's age is not element of crime of sexual battery).

Moreover, as Respondent indicates, it would have been futile for defense counsel to have argued in the JOA motion that Anderson did not actually possess the firearm.  ECF No. 10 at 44.  The State offered sufficient evidence that he possessed the firearm while trafficking methamphetamine. *See* Ex. 9 at 54-59 (testimony of Deputy Haver regarding his observation of "clear baggie with a large amount of crystal substance, which [he] knew to be methamphetamine" under the rear bumper of car Anderson was driving; finding keys to car in Anderson's pocket; observing "further underneath the bumper, toward the inside of the car, there ended up being a handgun, a bag of marijuana, [and] a box of cigarettes," all of which were "approximately six to eight inches apart," including the clear baggie of methamphetamine; finding "an additional baggie [of methamphetamine] on the passenger floor

board" as well as "some baggies in the center console, Ziploc baggies, multiple of them and a black scale"); 97 (Anderson's fingerprint on gun); 102 (Anderson's DNA on gun).   Thus, even if defense counsel had made the argument, a JOA motion on this basis would have been denied.

Based on the foregoing, Petitioner Anderson has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## <u>Ground 6</u>:  IAC – Failure to Investigate

In his sixth ground, Petitioner Anderson asserts his trial counsel provided ineffective assistance by failing "to investigate the facts surrounding his case before trial, which should have led him to file a motion to suppress." ECF No. 1 at 14.  Specifically, this ground concerns trial counsel's failure to depose Deputy Haver.  *Id.*  As both Petitioner and Respondent indicate, Anderson raised this claim in the ninth ground of his Rule 3.850 motion.  Ex. 35 at 122-26; *see* ECF No. 1 at 15; ECF No. 10 at 45.   The state postconviction trial court denied the claim, making the following findings:

> In his ninth claim, Defendant alleges that his counsel was ineffective for failing to move to suppress "his identification."  The exact basis on which he believes he was entitled to suppression is unclear, however, he appears to argue that counsel should

have filed a motion to suppress based on the body of case law surrounding two issues:  1) the time allowed for issuing a traffic citation and 2) <u>Terry</u> investigative detentions.  He alleges that he was illegally seized without adequate legal basis and that his counsel should have filed a motion to suppress as a result.

The record shows that counsel, having considered the matter, declined to file a motion to suppress, finding no legal basis to do so.  Defendant, however, insisted that he had valid suppression issues, and the Court agreed to take testimony in order to allow Defendant an opportunity to bring his claims forward.  On November 25, 2015, the Court heard the motion, taking testimony from Deputy Haver.  The Court found no merit in Defendant's allegations, and denied the motion.  Defendant has raised no new grounds in the instant motion which suggest that his counsel would have been successful in suppressing his identification or any other evidence, had his counsel filed a motion to suppress.   Defendant has not shown deficient performance or prejudice, and he is not entitled to relief on this basis.

Ex. 39 at 14 (footnote omitted).

On appeal, the First DCA per curiam affirmed the case without a written opinion.  Ex. 42; <u>Anderson v. State</u>, 322 So. 3d 48 (Fla. 1st DCA 2021) (table).  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* <u>Richter</u>, 562 U.S. at 99; <u>Wright</u>, 278 F.3d at 1254-55.  A review of the record supports the state courts' determination.  *See* <u>Wilson</u>, -- U.S. --, 138 S. Ct. at 1192.

Regarding the time of the incident that resulted in Anderson's arrest, the record contains Deputy Haver's written arrest report, Ex. 2 at 23-27:

On 1/8/15, at approximately 0255 hours, at … in Escambia County, Florida, Ethan Anderson did knowingly and intentionally commit[] the offenses of trafficking methamphetamine (over 14 grams), grand theft of a firearm, possession of a firearm by a convicted felon, possession of ammunition by a convicted felon, possession of drug paraphernalia, possession of marijuana (under 20 grams), and resisting an officer without violence. The facts and circumstances are as follows.

On 1/8/15 at approximately 0250 hours, while sitting at the intersection of Old Corry Field Road and Chief's Way, a white Chevrolet 4-door car approached the intersection on Chief's Way, and made a right hand turn onto Old Corry Field Road. I observed the driver to be a black male wearing a dark colored sweatshirt, as I could easily see into the vehicle. As the vehicle made a right hand turn, I observed the Florida tag on the vehicle to be . . . , and conducted a registration check on the vehicle, which came back as expired as of 2013 as the license plate was not assigned to any vehicle. The white Chevrolet 4-door continued south on Old Corry Field Road, passing through the intersection heading toward Barrancas Avenue. I conducted a U-turn on Chief's Way and although I was caught at a red light at Old Corry caught up to the Chevrolet 4-door on Old Corry Field Road, approaching Barrancas Avenue as it made a left hand turn into the parking lot of the Suburban Lodge . . . . I did not immediately follow the vehicle into the parking lot of the Suburban Lodge, because I wanted to see if the vehicle was going to make a U-turn and come back out of the parking lot.

After approximately less than two minutes, the white Chevrolet 4-door had not come back out, so I drove into the parking lot of the Suburban Lodge. While driving through the parking lot, I observed the white Chevrolet 4-door backed in to a parking space with a black male standing with the driver's side door open, with him leaning into the car. I turned my vehicle around in the parking lot and pulled back up the vehicle, and exited my patrol vehicle to make contact with the black male driver.

Ex. 2 at 24.

In addition, the record contains a transcript of a <u>Nelson</u> hearing that took place August 14, 2015.  Ex. 10.  Anderson wanted to discharge defense counsel, Jeremy Early.  *Id*. at 177.  Early responded at the hearing:

> MR. EARLY:  Your Honor, I have went over the defendant's case with him.  I have went over everything about the defendant's case.  The defendant in his words Your Honor, wants a loophole.
>
> THE COURT:  He wants a loophole?
>
> MR. EARLY:  He wants a loophole, Your Honor, some magical way to get outside of the facts.  There is none. . . .
>
> Your Honor, the defendant's main grievance as Your Honor may recall from our last time, he believed that there was motions to suppress that should have been filed, motions to dismiss that should be filed.  And as an officer of the court, I can't file something that's not genuine.  There was no stop.  There was no – there is no reason for any of those.
>
> Basically, the facts are is the police pulled up right as he was standing outside the car.  The policemen alleged that they noticed a gun and some drugs underneath the car.  They ask the defendant to stop and he takes off running.  And he is charged with a gun and the drugs under the car.
>
> The defendant's basic defense that – I'm not going to go into what the – it's basically an entrapment or a framed defense, Your Honor, and I told him I don't believe that will work.  He says, well, there has got to be some loophole.  I tell him there is no loophole in the law. . . .
>
>       . . . .
>
>       . . . But that's basically – I don't have a magic way out of this and he wishes to have one, Your Honor.  And that's basically where we are at.

*Id*. at 178-80.  Anderson asserted that he "disagree[d] on some of what he is

saying because it's a lot of defenses of my case and he hasn't even looked

into it." *Id*. at 180.  Anderson explained:

> He look at my case as it's a murder case because that's what he
> says about all of his cases, bringing up about murder cases,
> which my case is a different case.  And he say he did not do
> depositions, and depositions in my case will be a strong defense
> in my case for the officers' statements.

*Id*. at 180-81.  The following then transpired:

> THE COURT:  Okay.  Well, I mean, he has explained about the
> motion to suppress, that he doesn't have the legal basis to do
> that, and he can't file a motion unless he has a good faith basis
> for doing so.  But is there anything else factually that you referred
> to Mr. Early that he has not acted upon?  I mean, any other
> witnesses, any pictures, a video tape, anything like that?
>
> THE DEFENDANT:  I haven't seen – I haven't seen none of that.
>
> THE COURT:  Okay.  But you are not aware of it any?
>
> THE DEFENDANT:  But I asked to see – to see what kind of
> evidence they have, what are you going to send me, and
> everything.  He has not done none of that.  And I have all rights
> to see everything in my case.
>
> . . . .
>
> THE COURT:  . . . All right.  Mr. Anderson, what else is there that
> you think your attorney should have done that he has not done?
>
> THE DEFENDANT:  Mostly – mostly what I said where he hasn't
> done anything that's helpful.
>
> THE COURT:  Okay.  I need specifics.  What is it that he has not
> done that you think he should have done?  What is it – because
> you are arguing he's been ineffective.

THE DEFENDANT: He should have done the depositions and, you know, went over with me more about my case because in the courtroom – when you come into a courtroom and you only sit down with me for like two or three minutes and tell me, well – telling me nothing about my case. I mean, I've been incarcerated since January.

*Id*. at 181-83. The court found Early's representation had not been ineffective, and the following occurred on the record regarding depositions of law enforcement officers, with defense counsel indicating he did not believe it appropriate to take the officers' depositions in this case:

THE COURT: Okay. Well, I don't find that Mr. Early's representation has been ineffective. I mean, it is what it is, and he's an officer of the court. He can't file motions that don't have a legal basis, number one. And number two, you know, the witnesses are the law enforcement officers, correct?

MR. EARLY: Yes, sir.

THE COURT: To depose them, what is that going to achieve when he has got their statements, and all they are going to do at their deposition is say what is in their statements?

MR. EARLY: And Your Honor, if I may? I explained to him that basically the deposition of an officer is just them reading their statement to you. And when you object, the State says, well, they have a right to refresh their memory and then they go back and read – I've already read their statements. So that's why I don't depose officers. I told him that. That's where he was talking about the murder thing. I said not even in murder cases, I don't depose the officers. It just doesn't make any sense to.

THE COURT: Well, I'm sure as a blanket rule, that's not.

MR. EARLY: No, sir.

> THE COURT:   There is certainly opportunities when it is the appropriate thing to do.
>
> MR. EARLY:  Yes, sir.
>
> THE COURT:  You're saying in this case, based upon what the officers have testified to?
>
> MR. EARLY:  Yes, sir.
>
> THE COURT:  Okay.  Well, I'm going to deny the Nelson hearing. I don't hear anything that Mr. Early has done that's less than what is required under the competency of counsel.  You know, you are entitled to a competent attorney.  You are not entitled to a magician, and he can't create loopholes that don't exist.

*Id*. at 184-85.

At some point after the hearing on August 14, 2015, Anderson discharged Early and decided to represent himself.  *See id*. at 192.  During that time, Anderson filed a pro se motion to dismiss.  *See id*. at 206.  The court heard the motion on November 25, 2015, by which point Early again represented Anderson.  *Id*.  The transcript of the hearing reflects that Early explained the motion:

> Your Honor, Mr. Anderson is asking that the Court suppress all evidence in this case that was obtained based on a stop that did not happen.  But had the stop have happened and if the officers were lying about their reasoning for the stop, there might be a suppression issue there.
>
> However, in the facts of the case that we have – that we have to deal with, Mr. Anderson was, indeed outside the car.  He had already stopped.  He was outside the car when the officers approached him.

But he wishes to have the Court suppress all evidence in
the case that they obtained based on what would've happened
had they have stopped him, Your Honor.

*Id*.

During the hearing, Deputy Kyle Haver testified, consistent with his

arrest report, and answered questions regarding the circumstances of the

sighting, the running of the license plate, and the resulting encounter in the

Suburban Lodge parking lot, as well as his in-car video.  *Id*. at 207-19.  Haver

explained how he saw Anderson's license plate:  "My window was down.

When he made that turn he was only going less than five miles an hour.  I

was able to look out my window and see it as he passed me."  *Id*. at 219.

Anderson stated, "I want to present these – this call history where he

never called the tag in because he never seen the tag because he was in

front of me at the light and when he did the U-turn, I made a right turn and

it's two o'clock in the morning, but how did you advise that you seen me . . . ."

*Id*.  The judge asked, "Is there some record of the calling of the tag?"  *Id*. at

220.   The prosecutor indicated, "He's referring to the CAD report, Your

Honor, which is dispatch's logging of, like . . . where everybody is and

whatnot."  *Id*.  Deputy Haver offered to clarify:

THE WITNESS [Deputy Haver]:  Me and the other deputies were
on channel nine, which is car to car frequency, so it doesn't
transfer off the repeater, which is just car to car.  And when I ran

the tag, I ran it through MCT . . . Our computer system in our car. I ran it myself through my computer.  So I didn't run it actually through dispatch.

THE COURT:  Okay.  So you directly on your car computer are able to check –

THE WITNESS:  Correct.

THE COURT:  – license tags with DMV.

THE WITNESS:  We are able to check driver's licenses, everything.

THE COURT:  Okay.  So it wouldn't show up on the CAD.

THE WITNESS:  It wouldn't show up on – he's looking at the call – what is transmitted over the air.

*Id*. at 221-22.  No other witnesses testified.  *See id*. at 222.

The judge denied the motion to suppress.  *Id*.  Anderson said, "I wanted – I wanted to be represented by counsel that would represent to the best of my interests."  *Id*. at 223-24.  The judge said "let me put it to you this way":

You are entitled to an attorney who can give you their professional representation.  The attorney cannot make arguments that are not supported in law or in fact.  No attorney can make an argument that is not supported in law or in fact.  That is in violation of their oath.  That's in violation of the regulations that control the attorneys.

I could appoint a hundred attorneys for you.  They couldn't do anything different than what Mr. Early has done because the issues that you raise are all nonissues.  They're – I mean, the motion to suppress, the arrest, the testimony of the officer is more than sufficient.  Now, whether the jury's going to buy it and believe it, you know, that's another question altogether.  The

State has the burden to prove beyond a reasonable doubt.
But based upon what evidence I have here on the motion to suppress, the State carried their burden of proving that the evidence was properly [obtained.] . . .

You know, your theory of innocence is that you were somewhere else and just happened to be walking by. The problem with that theory of innocence is the keys in your pocket fit the car that had the tag that the deputy could run and the deputy saw you at the car at the time and the Waffle House that you – the nearest Waffle House you could've been at was two miles away. So your reasonable hypothesis of innocence doesn't exist.

So there was nothing that Mr. Early could legally and ethically have argued. I could give you a hundred different attorneys and none of them could legally or ethically argue differently either. You may not like the law. You may not like the rules and regulations. Okay? You may be under this impression that, you know, there are all these wonderful loopholes out there where, you know, you show the slightest mistake or the slightest variation, you know?

You made a major mistake this morning when you said on the record into the microphone that you were wearing the camouflage hat. I didn't know anything about a camouflage hat until then. But the deputy remembered the camouflage hat. But that was an issue – I don't even know if that was in the police report, but you, kind of, made an admission against your own interest when you said that.

So you would have been best, had you followed your attorney's advice to not file the motion, not proceeded with the motion, and not made the statement on the record that you did. I'm trying to give you the best chance I can to understand what's going on here, but you insist on not understanding. Okay?

The lawyer can represent you, but the lawyer can't violate the law, all right? The State's got a really good case on you. Now, I'm not the judge of the facts of the case. That's the jury's

job.  I just follow the law.  Now, I'll tell the jury what the law is. The people are going to testify.  You can testify if you want to or you can remain silent if you want to.  That's your choice.  I'm not – you don't have to testify.  The State has the burden of proving their case without you saying a word.

Once all the evidence is in and the instructions are given, whether the jury believes that the State has proven their case beyond a reasonable doubt, I don't know if they will or they won't. But you don't have a technicality that will get you off of this case. It doesn't exist.  It's not there.  Okay?

Trust me.  When there's a technicality and there's a basis under the constitution – I teach constitutional law, all right?  I'm very familiar with the 4th Amendment.  I'm very familiar with search and seizure.  I'm very familiar with motions to suppress and Supreme Court's rulings on those cases as well as the Florida Supreme Court's rulings on those cases as well.  You don't have it.  It's not there.

Legally you don't have a basis to suppress any of the evidence, any of the testimony.  So the evidence is coming in. Now, do they have enough to convict you?  That's a jury's decision.  That's not my decision.  But, you know, it's not Mr. Early who's disserved you, okay?  You're the one who's been disserving yourself by playing these games and insisting back and forth and hiring another lawyer and going pro se and everything else.

All you've done is kept yourself in prison longer waiting to get the case tried and making the case older and older . . . .  I don't know what other evidence the State has.  I don't know if they have any forensic evidence.  I don't know.

*Id*. at 224-27.  The prosecutor responded that they have fingerprints and DNA evidence on the gun.  *Id*. at 227-28.  The judge indicated "there's no legal basis to suppress it," and suggested Anderson follow his attorney's

advice.  *Id*. at 228.  At the conclusion, the judge indicated, "We're trying it

December 7th."  *Id*. at 230.  He further stated:

> Mr. Anderson, you know, you – you may refuse to believe what I'm telling you.  You may refuse to believe what Mr. Early is telling you.  We have no reason to tell you anything other than the truth.  I mean, it's no skin off my nose.  It doesn't matter to me whether you get convicted or not.  It really doesn't, okay?
>
> I mean my job is to see that the proper procedure is followed.  Whatever the result is, is the result.  I don't get paid more or less based upon the number of cases that result in guilty or not guilty.  It doesn't make any difference to me.  I don't have a scorecard that I keep.  I don't follow any records.  I mean, you know, it's just simply not relevant to me.
>
> What's relevant to me is that everybody in my courtroom gets a fair trial according to the rule of law.  I've bent over backwards trying to give you every possible advantage, even having this hearing today when your attorney has said there is no basis for it.  There was no basis for it.  He was right.  Okay?
>
> I gave you the benefit of the doubt.  I gave you the hearing. We had the officer spend his time coming here.  We had Ms. Shea [the prosecutor] come here.  We put the evidence on.  Now, you can continue to – to live in your fantasy land and refuse to believe what I'm telling you, but that's your –
>
> THE DEFENDANT:  Well, I just want to put in for my change of venue.
>
> THE COURT:  Denied.  All right.  We're picking the jury Monday, December 7th.

*Id*. at 230-31.

The record thus supports the postconviction court's findings that

defense counsel "considered the matter" and "declined to file a motion to

suppress, finding no legal basis to do so." Further, when Anderson, proceeding pro se, filed a motion to suppress, the court heard the motion, testimony from Deputy Haver, and allowed Anderson the opportunity, even when again represented by Mr. Early, to present his claims. The judge denied the motion, finding no merit and accepting the testimony of Deputy Haver regarding the circumstances of the incident resulting in Anderson's arrest. As the court indicated, nothing suggests defense counsel would have succeeded in suppressing Anderson's identification or any other evidence, if counsel had filed a motion.

Anderson points out the possible one-hour time difference between Deputy Haver's call at approximately 2:50 a.m., to check the license plate on the car Anderson was driving, and the FDLE Transaction Archive Report reflecting a call at 3:49 a.m. that day. *See* Ex. 37 at 4 (exhibit to Anderson's Rule 3.850 motion); *see also* ECF No. 1 at 14; ECF No. 8-1 at 13. As demonstrated by the above transcript excerpts, neither Anderson nor anyone else specifically asked Haver about this during his testimony regarding how and when he called in the tag. As Respondent suggests, the time differences could simply reflect that FDLE, receiving the call, is located in the Eastern Time Zone, whereas Haver made the call from the Central Time Zone, which is one hour earlier. *See* ECF No. 10 at 48-49. Regardless, the state court

had all this before it when it denied the claim and nothing indicates it was not considered, although the court did not specifically address it in the order denying postconviction relief.    At bottom, this point does not render unreasonable the court's acceptance of Haver's testimony concerning the incident, the court's rejection of Anderson's challenge to the Haver's version of events, or the court's conclusion that defense counsel was not ineffective.

Based on the foregoing, Petitioner Anderson has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

### <u>Ground 7</u>:  IAC – Inadequate Cross-Examination

In his seventh ground, Petitioner Anderson asserts his trial counsel provided ineffective assistance by failing "to adequately cross-examine a key witness for the State and effectively impeach her testimony concerning [his] possession of a firearm."  ECF No. 1 at 16.  The witness is Mary Beth Byrie, Escambia County Sheriff Latent Print Examiner.  *Id*.  Petitioner raised this claim in the tenth ground of his Rule 3.850 motion.  Ex. 35 at 127-30; *see* ECF No. 1 at 17.  The state postconviction trial court denied the claim:

> In his tenth claim, Defendant asserts that his counsel was
> ineffective for failing to effectively impeach the latent print

examiner with queries about "the life of a print, how long it could survive on a particular item, and whether she could testify to . . . the fingerprint being placed on that firearm while Defendant was allegedly committing drug trafficking." He asserts that the State's evidence only showed that he had, at some point in time, touched the firearm, but did not show that he "touched or carried it at the time of the trafficking offense."

Defendant has made no showing that the results of his trial would have been different, had counsel impeached the latent print examiner with this line of questioning. Although the point could have been explicitly made, it is within the realm of common knowledge that the mere presence of a fingerprint on an object does not indicate when the print was placed on that object. Given this, along with the circumstances surrounding Defendant's arrest, and the evidence presented at trial, the Court does not find that impeachment on this point would have rendered a different result at trial. Defendant is not entitled to relief on this basis.

Ex. 39 at 14-15.

On appeal, the First DCA per curiam affirmed the case without a written opinion. Ex. 42; Anderson v. State, 322 So. 3d 48 (Fla. 1st DCA 2021) (table). This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. See Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55. A review of the record supports the state courts' determination. See Wilson, -- U.S. --, 138 S. Ct. at 1192.

The State presented evidence that Anderson's fingerprints were on the firearm. See Ex. 9 at 97. Anderson asserts defense counsel should have

questioned the fingerprint expert about how long a print may remain on such a surface.  The postconviction court determined that, although the point could have been made that Anderson touched the firearm, but that did not necessarily mean he did so at the time of the trafficking offense, "it is within the realm of common knowledge that the mere presence of a fingerprint on an object does not indicate when the print was placed on that object." Further, as the court concluded, given the other evidence and circumstances surrounding Anderson's arrest, as referenced in the analysis of Grounds 2, 3, 5 and 6, *supra*, it cannot be said the outcome of the trial would have been different if defense counsel had pursued the suggested line of questioning.

Moreover, in addition to the fingerprint, the State presented evidence that Anderson's DNA was on the firearm.  Specifically, Jennifer Kay, an FDLE crime laboratory analysis in the biology section, testified that she "found an inclusion for the firearm swab" when she compared it to "buccal swabs from Ethan Lamar Anderson."  Ex. 9 at 102.  She also testified that certain surfaces are more conducive to capturing DNA, "[k]ind of like you would expect like smooth surfaces won't hold it as well, it [will] be easier to wipe it off like glass" and "[y]ou can wipe off DNA a lot easier."  *Id*. at 103.

Based on the foregoing, Petitioner Anderson has not demonstrated that the state courts' rejection of this ground involved an unreasonable

application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## Conclusion

Petitioner Anderson is not entitled to federal habeas relief.  It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## **Recommendation**

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 12, 2023.

**S/  Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**